UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**PATRICK MICHAEL FAETH,**

                             **Plaintiff,**                             6:19-CV-6133Sr

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                             **Defendant.**

_____

## <u>DECISION AND ORDER</u>

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #13.

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), with the Social Security Administration ("SSA"), with a protective date of April 21, 2015, alleging disability due to degenerative disc disease, cervical disc disease, left arm nerve damage, depression, anxiety, mood disorder, PTSD and alcoholism. Dkt. #7, pp.127 & 188.

On October 30, 2017, plaintiff appeared with his case manager from the Alcohol Crisis Center, Erica Bescozzi, and testified, along with an impartial vocational

expert ("VE"), Sakinah Malik, at an administrative hearing before Administrative Law Judge ("ALJ"), John Costello. Dkt. #7, pp.30-68. Plaintiff dropped out of school in the eighth grade, but obtained his general equivalency diploma ("GED"). Dkt. #7, p.41. Plaintiff injured his spine and lost the grip strength in his left arm following a fall from a tree while he was working for a tree company. Dkt. #7, pp.40-41 & 51. He left Freedom Village in August because he wasn't getting along with anyone and was caught smoking a cigarette. Dkt. #7, pp.42-43. He was residing in a barn without heat or a shower. Dkt. #7, pp.36 & 38. He does not have a driver's license. Dkt. #7, p.37. He was going to AA, but continued to drink a couple beers a day, but not every day, as he doesn't drink a lot anymore and was practicing moderation. Dkt. #7, pp.42 & 52. He was taking Depakote for bipolar disorder and Effexor for depression. Dkt. #7, pp.45-46. He was also receiving injections for spinal pain, but testified that alcohol was the only thing that helped the pain. Dkt. #7, pp.47-48. He is able to walk a mile, but can't stand in one place for any length of time. Dkt. #7, pp.49-50.

Ms. Bescozzi testified that she had been plaintiff's care manager for approximately nine months. Dkt. #7, p.56. She opined that plaintiff would be unable to navigate his healthcare needs without her assistance, noting that she often reminded him about appointments. Dkt. #7, p.61. She testified that plaintiff reported that he was drinking substantially less than he was when she first started working with him, stating that she last observed plaintiff to be intoxicated after he was released from Horizons in September, when the police were called to his residence because he had threatened to harm himself. Dkt. #7, p.62.

When asked to assume an individual with the residual functional capacity ("RFC"), to perform light work, who was limited to occasional handling and reaching, and no fingering with his non-dominant left hand; no climbing of ladders or scaffolds; only occasional interaction with co-workers and the general public; and was limited to simple, routine tasks, the VE testified that plaintiff could not perform his past work, but could work as a chaperone or sandwich board carrier, both of which are unskilled, light exertion positions. Dkt. #7, pp.65-66. If limited to low stress work, defined as only occasional decision making, the VE testified plaintiff could still work as a sandwich board carrier and could also work as a research subject, which was an unskilled, light exertion position. Dkt. #7, p.66. The VE further testified that plaintiff could not perform any unskilled work if he was absent from work four days per month or off task 20% of his work day. Dkt. #7, p.67.

The ALJ rendered a decision that plaintiff was not disabled on January 17, 2018. Dkt. #7, pp.10-21. The Appeals Council denied review on December 19, 2018. Dkt. #7, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 20, 2019. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has

sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since his protective application date of April 21, 2015; (2) plaintiff's degenerative disc disease in both his lumbar and cervical spine, depression, anxiety, left shoulder degenerative joint disease and alcoholism in early remission constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work with the following non-exertional limitations: no ladders, occasional reach, handle and finger with non-dominant left hand, simple routine tasks, and occasional interaction with coworkers and the general public; and (5) plaintiff was not capable of performing his past work as a tree cutter, but was capable of performing work as a chaperone and sandwich board carrier, both of which are unskilled, light exertion positions and was not, therefore, disabled within the meaning of the SSA. Dkt. #7, pp.15-23.

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to explain how the consulting medical opinion evidence supported his RFC and failed to consider the opinion of the state agency

reviewing consultant. Dkt. #10-1, pp.10-13. Specifically, plaintiff challenges the ALJ's failure to adequately address his capacity to deal with stress. Dkt. #10-1, pp.12-14. Plaintiff further argues that the ALJ failed to properly analyze his history of drug abuse and alcoholism. Dkt. #10-1, pp.16- 17. Finally, plaintiff argues that the ALJ failed to identify specific reasons for rejecting his subjective complaints. Dkt. #10-1, pp.17-19.

The Commissioner responds that the consulting medical opinions are consistent with the ALJ's RFC. Dkt. #11-1, pp.5-6. More specifically, the Commissioner argues that Dr. Caldwell's assessment of moderate limitations did not preclude unskilled work. Dkt. #11-1, pp.6-7. Moreover, the Commissioner argues that the ALJ's RFC accommodated plaintiff's limitations in dealing with stress and interacting with others by limiting him to simple, routine work. Dkt. #11-1, pp.7-8. Because the ALJ determined that plaintiff was not disabled due to alcoholism, the Commissioner argues that he was not required to assess whether his alcoholism was a contributing factor to the finding of disability. Dkt. #11-1, p.10. Finally, the Commissioner argues that the ALJ appropriately analyzed plaintiff's subjective complaints. Dkt. #11-1, pp.10-12.

Plaintiff replies that Dr. Jenouri's opinion was impermissibly vague and that the ALJ improperly conflated plaintiff's drug abuse and alcoholism into the initial disability determination. Dkt. #12.

**Physical Impairments**

On July 6, 2015, Gilbert Jenouri, M.D., conducted a consultative internal medicine examination and determined that plaintiff would have a moderate restriction

-6-

lifting, carrying, and grasping with the left upper extremity. Dkt. #7, p.428. That opinion was based upon an examination in which he observed left hand muscle atrophy with thenar prominence on the left thumb and flexion contraction of the third, fourth and fifth digits of the proximal interphalangeal joints of the left hand, with reduced grip strength. Dkt. #7, p.428. Dr. Jenouri indicated that plaintiff was unable to zip, button and tie with his left hand. Dkt. #7, p.428. The ALJ afforded Dr. Jenouri's opinion great weight. Dkt. #7, p.17.

Dr. Jenouri's opinion regarding plaintiff's moderate limitation in capacity for lifting, carrying, and grasping with the left upper extremity is accounted for by the ALJ's limitation of plaintiff to occasional reaching, handling and fingering with plaintiff's non-dominant left hand. *See Burdick v. Comm'r of Soc. Sec'y*, 18-CV-6881, 2020 WL 1445263, at *4 (W.D.N.Y. March 25, 2020) (consultative examiner's opinion that plaintiff would have moderate to marked restriction in ability to lift and carry consistent with ALJ's RFC limiting plaintiff to occasional lifting and carrying of 10 pounds or frequently lifting and carrying less than 10 pounds); *Ball v. Berryhill,* 2018 WL 2041596, at *3 (W.D.N.Y. May 2, 2018) (plaintiff could perform occasional handling where consultative examiner found moderate limitations in grasping on one side); *Renee v. Berryhill*, No, 15-CV-400, 2017 WL 6618737, at *3 (W.D.N.Y. Dec. 27, 2017) (moderate limitation is adequately accounted for in a finding that plaintiff can perform such activities only occasionally); *See also* SSR 83-10 (defining "occasional" as "occurring from very little up to one-third of the time").

**Mental Impairments**

In 1996, Congress enacted the Contract with America Advancement Act ("CAAA"), which amended the Social Security Act so that an individual will not be considered disabled if alcoholism or drug addiction would be a material contributing factor to the Commissioner's determination that the individual is disabled. *Cage v. Comm'r of Soc. Sec'y*, 692 F.3d 118, 123 (2d Cir. 2012), *citing* 42 U.S.C. § 1382c(a)(3)(J), *cert. denied*, 570 U.S. 919 (2013). In analyzing cases where substance abuse is present, the regulations make clear that the ALJ must first make a determination as to disability by following the five-step sequential evaluation process without segregating any effects that might be due to substance use disorders. *Colbert v. Comm'r of Soc. Sec.*, 18-CV-702, 2019 WL 6648562, at *3 (W.D.N.Y. Dec. 6, 2019). In other words, the ALJ's initial disability determination should concern strictly symptoms, not causes. *Id.* Where an ALJ conflates the affect of substance abuse with the initial disability determination itself, remand is required. *Piccini v. Comm'r of Soc. Sec.*, No. 13-CV-3461, 2014 WL 4651911 at *12 (S.D.N.Y. Sept. 17, 2014). It is only after a plaintiff is determined to be disabled and the medical records reveal substance abuse problems that the ALJ considers whether drug addiction or alcoholism is a material contributing factor to the finding of disability. *Cage*, 692 F.3f at 123. At that point, the critical question is whether the SSA would still find the plaintiff disabled if he ceased using drugs or alcohol. *Id.* It is the plaintiff's burden to establish that his drug addiction or alcoholism is not material to the determination that he is disabled. *Id.*

On July 6, 2015, Christina Caldwell, Psy.D., conducted a consultative psychiatric evaluation of plaintiff and determined that plaintiff's psychiatric problems

may significantly interfere with his ability to function on a daily basis. Dkt. #7, p.422. Specifically, Dr. Caldwell opined that plaintiff evidenced moderate limitations in his ability to make appropriate decisions and relate adequately with others and moderate to marked limitations in his ability to appropriately deal with stress. Dkt. #7, p.422. His affect was observed to be anxious. Dkt. #7, p.421. Dr. Caldwell diagnosed major depressive disorder, unspecified anxiety disorder and alcohol use disorder, in early remission. Dkt. #7, p.422.

On August 11, 2015, state agency consultant Dr. S. Juriga reviewed plaintiff's medical record and opined that, assuming plaintiff remained abstinent from alcohol, he appears capable of working in a low contact, low stress environment. Dkt. #7, p.430. Dr. Juriga further opined that plaintiff's ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact and that his ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting. Dkt. #7, p.430.

The ALJ did not address Dr. Juriga's opinion, but afforded Dr. Caldwell's opinion great weight, emphasizing that her opinion was consistent with her examination finding only mild memory problems and plaintiff's own self-report of no problems with daily activities. Dkt. #7, p.19. At the time of this consultative examination on July 6, 2015, plaintiff reported that he had been sober since January 1, 2015. Dkt. #7, pp.420 & 444. The ALJ noted that plaintiff's "problems revolve around periods of substance

abuse and when sober his symptoms are decreased" and that plaintiff has demonstrated "improvement in functioning when sober and maintaining attendance at programs." Dkt. #7, p.19. In support of that determination, however, the ALJ relied upon a discharge summary from the Ontario Department of Mental Health Mental Health Center stating that plaintiff "continued to abuse alcohol and other substances during this episode of treatment" between August 3, 2015 and October 27, 2015, and noting that plaintiff "tested positive for cocaine, alcohol and methamphetamine." Dkt. #7, p.449.

The ALJ also noted that medical records indicated that plaintiff was negative for depressed mood and anxiety at an appointment immediately following a 21 day rehabilitation program and opined that plaintiff has demonstrated improvement in functioning when sober and maintaining attendance at programs. Dkt. #7, p.19. However, that record, which is dated May 31, 2017, ten days after his release from inpatient treatment, indicates that plaintiff had already returned to drinking. Dkt. #7, p.454. Overall, the record reveals significant ongoing substance abuse treatment:

| | |
|---|---|
| October 21, 2014 - November 25, 2014 | Inpatient |
| January 3, 2015 - January 20, 2015 | Outpatient |
| January 20, 2015 - February 22, 2015 | Inpatient |
| February 22, 2015 - June 2, 2015 | Residential |
| June 2015 | Residential |
| May 5, 2016 | Completed Inpatient |
| February 10, 2017 - February 22, 2017 | Detox |

| | |
|---|---|
| February 22, 2017 - March 8, 2017 | Inpatient |
| March, 2017 | Detox |
| April 4, 2017 - April 6, 2017 | Inpatient |
| April 7, 2017 - April 10, 2017 | Detox |
| April 30, 2017 - May 21, 2017 | Inpatient |
| June 6, 2017 - June 20, 2017 | Detox |
| June 20, 2017 - August 2, 2017 | Residential |

Dkt. #7, pp.318, 435, 454, 458, 487-490. Moreover, less than three months prior to his hearing, plaintiff was diagnosed with bipolar disorder, alcohol use disorder, cocaine use disorder, and opiod use disorder. Dkt. #7, p.487. Treatment notes from that inpatient stay note that he struggled with emotional regulation, impulsive behavior and cravings for alcohol and was discharged to the City Mission for violating the nicotine policy. Dkt. #7, p.491.

As the record suggests that the ALJ based his determination on a short-lived period of sobriety and may not have considered evidence of significant effects of ongoing substance abuse in his initial assessment of plaintiff's RFC, remand is required. *See Anderson v. Berryhill,* 14-CV-6937, 2017 WL 1154993, at *11 (E.D.N.Y. March 27, 2017) (remanding where ALJ assessed plaintiff's RFC during period of sobriety and compliance with treatment despite consistent references to polysubstance abuse); *Piccini*, 2014 WL 4651911 at *12 (remanding where ALJ's decision indicated that he may have improperly minimized or excluded symptoms because they may have been caused by substance abuse); Day v. Astrue, 2008 WL 63285, at *6 (E.D.N.Y. Jan.

3, 2008) (remanding where it was unclear whether or not plaintiff's alcoholism and drug abuse were the basis for the ALJ's determination that plaintiff was not disabled). Upon remand, the ALJ should obtain updated medical source opinion evidence, as it appears that plaintiff's condition deteriorated subsequent to Dr. Caldwell's consultative examination and was stale at the time of plaintiff's hearing.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is granted in so far as plaintiff seeks remand for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**   **Buffalo, New York**
            **September 29, 2020**

                                          *s/ H. Kenneth Schroeder, Jr.*
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**